UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

IN RE HUDSON VALLEY CARE
CENTERS, INC

        Debtor,

Bankr. Case No. 05-16436

_____

COLUMBIA COUNTY INDUSTRIAL
DEVELOPMENT AGENCY,

                Appellant,

Dist. Ct. Civil Action
1:06-CV-1158
(LEK)

    -against-

HUDSON VALLEY CARE CENTERS, INC.,

                Appellee.

_____

## <u>DECISION AND ORDER</u>

On September 27, 2006, Appellant Columbia County Industrial Development Agency ("CCIDA" or "Appellant") filed with this Court a Notice of Appeal from an Order of the United States Bankruptcy Court for the Northern District of New York (Littlefield, B.J.), entered on July 7, 2006, granting Debtor's Motion to assume the receivership agreement and reject two payment in lieu of tax agreements ("PILOT"). Notice of Appeal (Dkt. No. 1); Order (Dkt. No. 1, Attach.1). Appellant now contends that the Bankruptcy Court erred by allowing Debtor Hudson Valley Care Center ("Debtor" or "HVCC" or "Appellee") to reject the PILOT agreements. For the reasons discussed below, this Court agrees with Appellant and reverses the Bankruptcy Court's Order.

### I.    BACKGROUND

This case stems from a bond financing transaction in February 2002, between Debtor and

CCIDA, which assisted Debtor's acquisition of the Green Manor Nursing Home, Adult Home and Health Care Complex ("the Facilities").[1]  HVCC's Mem. of Law (Dkt. No. 9) at 4-5; CCIDA's Mem. of Law (Dkt. No. 6) at 2-3.  Under the terms of the transaction, the Facilities are titled to CCIDA until HVCC repays the bonds.  HVCC's Mem. of Law (Dkt. No. 9) at 5.  CCIDA's possession of title makes the Facilities exempt from property taxes.  Id.  However, to ensure that the local municipalities do not lose all tax proceeds, HVCC is responsible for making payments in lieu of taxes to CCIDA, which transfers the payments to the relevant local authorities.  Id. at 6; CCIDA's Mem. of Law (Dkt. No. 6) at 3-4.  The PILOT payments equal a certain reduced percentage of the taxes that would be assessed against the Facilities, if they were taxable.  Over the course of the PILOT agreement, the payments increase until they equal the full amount the Facilities would be taxed.  HVCC's Mem. of Law (Dkt. No. 9) at 6; PILOT (Dkt. No. 3, Attach. 2) at 67-105.  The transaction is described in an Installment Sale Agreement ("ISA") and two PILOT agreements.  CCIDA's Mem. of Law (Dkt. No. 6) at 3; ISA and PILOT (Dkt. No. 3, Attach. 2) at 9-161 (including agreements between CCIDA and HVCC's predecessors in interest).

   HVCC, which is currently a debtor-in-possession of the property, is seeking to reject the PILOT agreements under Section 365(d)(4) of the Bankruptcy Code.  On July 7, 2006, Judge Littlefield granted HVCC's motion.  Order (Dkt. No. 1, Attach. 1); See also Oral Decision (Dkt. No. 3, Attach. 12) at 4-13.  CCIDA then appealed that decision to this Court.  Appeal (Dkt. No. 1).  This Court has jurisdiction over the parties and subject matter pursuant to Section 158 of

---

[1] The agreements at issue here were originally made between the Appellant and Appellee's predecessor-in-interest.  In 2002, Appellee accepted assignment of all rights, title and interest to the agreements, with some mutually agreed amendments.  HVCC's Mem. of Law (Dkt. No. 9) at 4.

Title 28 of the United States Code.

## II.  STANDARD OF REVIEW

In reviewing the rulings of a bankruptcy court, a district court applies the clearly erroneous standard to a bankruptcy court's conclusions of fact, and reviews *de novo* conclusions of law. In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2d Cir. 1997).  Mixed questions of law and fact are reviewed *de novo*.  In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003).

## III.  DISCUSSION

Before allowing the Debtor to reject the PILOT agreements, a court must determine both (1) that the agreements are the type of contract that can be rejected under Section 365 and (2) whether rejection would be beneficial to the estate, under the business judgment rule.  In re Orion Pictures Corp., 4 F.3d 1095, 1099 (2d Cir.1993).

### A.  Are PILOT Agreements Executory Contracts?

Section 365 of the Bankruptcy Code allows a debtor to assume or reject any executory contract or unexpired lease of the debtor, subject to a court's approval.  11 U.S.C. § 365(a). Although the Bankruptcy Code does not define an executory contract, courts in the Second Circuit frequently use the "Countryman" definition, which identifies a contract as executory if it is unperformed such that the failure of either party to complete performance would constitute a material breach.  See In re Hotel Syracuse, 155 B.R. 824, 843 (N.D.N.Y. 1993) (Gerling, B.J.);In re Helm, 335 B.R. 528 (S.D.N.Y. 2006) (quoting Countryman, "Executory Contracts in Bankruptcy: Part I", 57 Minn. L. Rev. 439, 460 (1973)).

The parties disagree whether the PILOT agreements can be considered executory contracts. HVCC describes the PILOT agreements as annually renewable, in which each year HVCC pays CCIDA the PILOT payments and, in return, CCIDA grants HVCC tax-exempt status. HVCC's Mem. of Law (Dkt. No. 9) at 15. The Bankruptcy Court accepted HVCC's characterization of the PILOT contract. Oral Decision (Dkt. No. 3, Attach. 12) at 10. However, CCIDA argues that this characterization of the contract is wrong and that its performance under the contract is primarily completed. CCIDA's Reply (Dkt. No. 10) at 7. The material performance required of CCIDA was issuing civic bonds to finance HVCC's acquisition of the Facilities. CCIDA describes its remaining obligations to collect HVCC's payments and distribute them to the local taxing authorities as *de minimis*. The only material obligation remaining, according to CCIDA, is that of HVCC to make the payments. Id.

1.  Connection Between PILOT Agreements and ISA

An important issue in this dispute is how the PILOT agreements are linked to the ISA. If the PILOT agreements and ISA are parallel but separate, as HVCC claims, CCIDA's issuing of bonds (an obligation under the ISA) would not be CCIDA's performance requirement under the PILOT. Instead, CCIDA's obligation to transmit HVCC's payments to the relevant taxing authorities, which CCIDA here describes as *de minimis*, would be the material performance required. Under such a scheme, the PILOT agreements would be executory, as performance would be due from both parties on an ongoing basis. Instead, if the PILOT and ISA agreements are interconnected, as CCIDA argues, then one cannot be rejected without the other. See In re Penn Traffic Co., 466 F.3d 75, 77 (2d Cir. 2006) (noting that a disguised financing arrangement is ineligible for treatment as an executory contract).

4

CCIDA argues that the PILOT agreements were a condition precedent to the bond issuance because without the PILOT agreements, the taxing authorities would lose all revenue from the Facilities. CCIDA Mem. of Law (Dkt. No. 6) at 3, 14 ("Until title to the property is conveyed out from the IDA, no real property taxes can be levied against the Property. This is the very reason for establishing the PILOT agreements- to maintain the revenue stream the local taxing authorities would otherwise collect, but for the IDA holding title.").

The Bankruptcy Court looked to the ISA to determine that the ISA and PILOT agreements were separable, though "they run in close parallel track." Oral Decision (Dkt. 3, Attach. 12) at 11-12. The Court emphasized Section 11.1 of the ISA, which holds that an early termination of the ISA shall not result in termination of the PILOT agreement unless CCIDA deeds all improvements in the facility to Debtor and delivers a bill of sale for all equipment. Id.; ISA (Dkt. No. 3, Attach. 2) at 47. The Bankruptcy Court interpreted this section to support the debtor's argument that the ISA and PILOT agreements are independent of each other. Oral Decision (Dkt. No. 3, Attach. 12) at 12. However, this Court does not reach that conclusion. The section states that the PILOTS should exist, even without the ISA, as long as CCIDA owns some aspect of the property. This shows the necessariness of the PILOTS, rather than the independence of the PILOTS from the ISA. The fact that PILOTS stay in existence until the property and all improvements are deeded over to HVCC supports CCIDA's argument that rejection of the PILOT agreements in isolation would not transfer title to CCIDA.

Section 5.1 of the ISA also supports CCIDA's assertion that title is transferred back to Debtor only when the term of the PILOT agreements expire in 2030 or when the CCIDA terminates the ISA. ISA (Dkt. No. 3, Attach. 2) at 21. The fact that tax-exemption is linked to

5

the IDA bond, rather than the PILOT, is supported by a statewide analysis of IDAs and PILOT plans conducted by the Office of the New York State Comptroller's Division of Local Government Services and Economic Development. The analysis noted that "[a]lthough a PILOT may end, if an IDA bond was still outstanding for the project, the parcel would not be returned to the tax roll." Office of New York State Comptroller, Division of Local Government Services & Economic Development, Industrial Development Agency: Payment In Lieu Of Taxes Billing Accuracy, 2005-MR-12, at 15, http://web3.osc.state.ny.us/localgov/audits/swr/2005mr12.pdf.

Indeed, HVCC's own papers acknowledge that rejecting the PILOT agreements would not change the Facilities' title. HVCC obviously seeks to reject the PILOT agreements to improve its own financial situation and claims that rejecting the PILOT agreements will accomplish this goal by allowing Debtor to either (1) assert its own tax-exempt status or (2) get the property reassessed for a much lower value. However, in a seeming conflict, HVCC also notes that title will remain in CCIDA's name if the PILOT agreements are rejected, leaving HVCC without any tax obligation "at least until the Debtor emerges from bankruptcy protection, if not thereafter as well." HVCC Mem. of Law (Dkt. No. 9) at 10-11, 12. This acknowledgment that the PILOT agreements do not control the title or the tax-exempt status of the Facilities further supports the conclusion that the PILOT agreements and the ISA are interconnected. Accordingly, any analysis of the parties' obligations and benefits must be undertaken with a view of the entire financing arrangement.

    2.    CCIDA's Material Performance

Viewing the ISA and PILOT agreements as part of one financing deal, the PILOT agreements cannot be understood to be executory. Under this arrangement, CCIDA's primary

obligation was providing the financing to allow HVCC's predecessor-in-interest to acquire the Facilities. The performance still required of CCIDA, receiving money from HVCC and passing it on to the local taxing authorities, cannot be understood to be material in the scope of this larger arrangement. See PILOT (Dkt. No. 3, Attach. 2) at 71 (describing CCIDA's role in collecting and distributing HVCC'S payments as mere "support").

HVCC's argument that CCIDA "trades" HVCC's tax-exempt status in exchange for annual PILOT funds is unavailing. CCIDA does not have the ability to "withhold" its performance and create a tax obligation for HVCC; that can be done only by transferring the title. CCIDA Mem. of Law (Dkt. No. 6) at 13. The benefit of tax exemption was granted years ago, when the transfer of title took place. The only material obligation remaining is that of HVCC to make its payments. "[W]here one party has already completed or substantially completed performance, *e.g.,* by delivering possession of goods or property and holds legal title in trust solely to secure payment of the amount financed, and the only remaining obligation for the receiving party is to complete payment, the contract is not executory for purposes of Code § 365." In re Hotel Syracuse, 155 B.R. at 843. The facts of this case fit the situation above. Accordingly, the PILOT arrangements are not executory and cannot be rejected under Section 365 of the Bankruptcy Code.

### IV.   CONCLUSION

In addition to the textual and legal reasons why the PILOT agreements cannot be rejected under Section 365, such a result is inconsistent with the purpose of the public financing scheme. The PILOT agreement of February 7, 1995, notes that the agreements are intended "to be for the

benefit of the Agency, the Developer, and the respective taxing authorities." PILOT (Dkt. No. 3, Attach. 2) at 90.  An interpretation of the financing arrangement that would allow Debtor to free itself from PILOT obligations, without assuming property tax obligations, would undermine the objectives of mutual benefit and community enhancement.  See Office of New York State Comptroller, Division of Local Government Services & Economic Development, Industrial Development Agency: Payment In Lieu Of Taxes Billing Accuracy, 2005-MR-12, at 6 ("the purpose of IDAs and PILOT agreements...is to encourage economic development to the mutual benefit of the ATJs, the local economy and participating developers").

Accordingly, it is hereby

**ORDERED**, that CCIDA's Appeal (Dkt. No.1) is **GRANTED**; and it is further

**ORDERED**, that the July 7, 2006 Order of the Bankruptcy Court is **REVERSED and REMANDED for action consistent with this Order**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Order by regular mail upon the parties to this action.

**IT IS SO ORDERED**.

DATED:       August 02, 2007
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge